UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 12-264(DSD/SER)

C.H. Robinson Worldwide, Inc.,

      Plaintiff,

v.                                                          **ORDER**

Priscilla Rodriguez, and Sun
Commodities, Inc., d/b/a
Sun International, a Florida
corporation,

      Defendants.

    Shannon M. McDonough, Esq., Alyson M. Palmer, Esq. and
    Fafinski, Mark & Johnson, P.A., 775 Prairie Center Drive,
    Suite 400, Eden Prairie, MN 55344, counsel for plaintiff.

    Lee A. Lastovich, Esq. and Felhaber, Larson, Fenlon &
    Vogt, P.A., 220 South Sixth Street, Suite 2200,
    Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motion to dismiss by defendants Priscilla Rodriguez and Sun Commodities, Inc. d/b/a Sun International (Sun Commodities). Based on a review of the file, record and proceedings herein, and for the following reasons, the motion is denied.

**BACKGROUND**

This noncompetition dispute arises from the employment of Rodriguez by Sun Commodities. Prior to joining Sun Commodities, Rodriguez worked for plaintiff C.H. Robinson Worldwide, Inc. (C.H. Robinson). First Am. Compl. ¶ 10. C.H. Robinson transports and

sells produce throughout the United States and Puerto Rico. Id. ¶¶ 8-9. Rodriguez began her employment with C.H. Robinson as an assistant/operations person in January 2001 and was promoted to account manager in 2009. Id. ¶¶ 11, 13.

On December 22, 2005, Rodriguez signed a noncompetition agreement (the Agreement). Id. ¶ 14. The Agreement stated that upon the conclusion of employment, Rodriguez would not

> [d]irectly or indirectly solicit, sell or render services to or for the benefit of any Competing Business,[1] including a business ... own[ed] in whole or in part, with any customer or prospective customer of the Company with whom I worked or had regular contact, or on whose account I worked, at any time during the last two years of my employment with the Company.

Id. Ex. 1, ¶ IV(C)(1). The Agreement explained that Rodriguez agreed to its terms "in consideration of the Company[] entrusting [her] with Confidential Information, ... [her] employment by the Company, and ... the compensation to be paid to [her] from time to time during such employment." Id. ¶ IV. The Agreement also

---

[1] Competing Business is defined as:
> "any business, firm, undertaking, company or organization, other than the Company, which (1) is engaged in ... a business or business similar to the Company Business, or (2) regardless of the nature of its business, either competes directly or indirectly with the Company in any of the Company Business, or (3) any person, company or organization engaged in the produce or transportation industries as a shipper, receiver or carrier.

First Am. Compl. Ex. 1, ¶ II(D).

contained a forum selection clause designating Minnesota as the exclusive legal forum. Id. ¶ IX.

In November 2007, C.H. Robinson granted Rodriguez 110 restricted stock units. In return Rodriguez acknowledged that:

> In consideration of and in return for this grant of Restricted Stock ... (1) I have received and had an opportunity to review and consider the documentation, Questions and Answers, and program description for the [stock program]; and (2) [The Company's] grant of Restricted Stock Units/Shares to me is part of the compensation and consideration available to me in return for and as a condition of the various agreements I previously have entered into with [the Company], which agreements may include, among others ... [a] Confidentiality and Noncompetition Agreement.

Id. ¶ 23. Rodriguez also agreed to "automatically forfeit all restricted stock" upon a breach of the Agreement. Id. ¶ 24.

Rodriguez resigned from C.H. Robinson on April 9, 2011. Id. ¶ 25. Thereafter, C.H. Robinson informed Rodriguez that it would limit the scope of the noncompetition clause to nine companies if she complied with the general provisions of the Agreement. Id. ¶ 27. On August 29, 2011, Rodriguez began a produce salesperson position with Sun Commodities, a company not on the list of restricted companies. Id. ¶ 28. C.H. Robinson alleges that Sun Commodities is a Competing Business as defined in the Agreement. Id. ¶ 29. C.H. Robinson sent cease-and-desist letters to both Rodriguez and Sun Commodities on October 26, 2011. Id. ¶¶ 31-32; id. Ex. 3.

On February 23, 2012, C.H. Robinson filed suit, alleging breach of contract against Rodriguez and tortious interference with contractual relations against Sun Commodities. C.H. Robinson also seeks to enjoin Rodriguez's employment at Sun Commodities. Rodriguez and Sun Commodities move to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim.

**DISCUSSION**

**I.   Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant.[2] See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). In the absence of an evidentiary hearing, a court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (citation and quotation marks omitted). Because the Minnesota

---

[2] The court must resolve questions of jurisdiction before considering the merits of an action. See Crawford v. F. Hoffman-La Roche Ltd., 267 F.3d 760, 764 (8th Cir. 2001).

4

long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," the court need only consider due process requirements. See Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." Romak, 384 F.3d at 984 (citation omitted). "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." Coen, 509 F.3d at 905 (citation and internal quotation marks omitted).

Contacts with the forum state can establish personal jurisdiction under either general or specific jurisdiction. A forum state has specific jurisdiction when the cause of action "arise[s] out of" or "relate[s] to" a defendant's activities within that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). General jurisdiction is present when, regardless of the cause of action, a defendant has "continuous and systematic contacts with the forum state." Coen, 509 F.3d at 905 (citation and quotation marks omitted).

**A. Enforceability of Agreement**

A valid forum selection clause is sufficient to confer specific jurisdiction. See St. Paul Fire & Marine Ins. Co. v.

5

Courtney Enters., Inc., 270 F.3d 621, 624 (8th Cir. 2001). Moreover, "[d]ue process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001) (citation omitted). Defendants do not dispute that the Agreement contains a forum selection clause, but instead argue that the Agreement is unenforceable. Specifically, defendants claim that the Agreement is invalid for lack of consideration and failure of consideration.[3]

### 1. Lack of Consideration

Defendants first argue that the Agreement is invalid for a lack of consideration. "Where a noncompetition agreement is not ancillary to an employment contract, it must be supported by independent consideration to be enforceable." Sanborn Mfg. v. Currie, 500 N.W.2d 161, 164 (Minn. Ct. App. 1993) (citation omitted). "The mere continuation of employment can constitute adequate compensation to uphold [noncompetition] agreements, but the [agreement] must be bargained for and provide the employee with real advantages." C.H. Robinson Worldwide, Inc. v. FLS Transp., Inc., 772 N.W.2d 528, 534 (Minn. Ct. App. 2009) (citing Davies &

---

[3] Lack of consideration and failure of consideration are distinct legal theories. "A lack of consideration means that no contract was ever formed; a failure of consideration, by contrast, means that an initially valid contract has become unenforceable." Olympus Ins. Co. v. Aon Benfield, Inc., No. 11-CV-2607, 2012 WL 1072334, at *8 n.5 (D. Minn. Mar. 30, 2012).

Davies Agency, Inc. v. Davies, 298 N.W.2d 127, 130-31 (Minn. 1980)). "The adequacy of consideration for restrictive covenants signed during an ongoing employment relationship will depend upon the facts of each case." Freeman v. Duluth Clinic, Inc., 334 N.W.2d 626, 630 (Minn. 1983).

Defendants argue that C.H. Robinson's grant of restricted stock was not independent consideration sufficient to support the Agreement. Specifically, defendants assert that the amended complaint contains no evidence that the stock was accepted, had any value or would have been unavailable to Rodriguez had she not signed the Agreement.

The amended complaint, however, alleges that "Rodriguez accepted the grant of restricted stock," agreeing that it "was part of the compensation and consideration available ... in return for and as a condition of various agreements, which may include, among others, [a] Confidentiality and Noncompetition Agreement." First Am. Compl. ¶¶ 22-23. Upon a motion to dismiss for lack of personal jurisdiction, the court construes all factual disputes in favor of the nonmoving party. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). As a result, these meager facts in the amended complaint are sufficient to "raise a reasonable expectation that discovery will reveal evidence" that Rodriguez accepted valuable stock that would have otherwise been unavailable had she not signed the Agreement.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Therefore, defendants' argument is without merit, and the court denies the motion to dismiss for lack of consideration.[4]

### 2. Failure of Consideration

Defendants next argue that the Agreement is invalid for a failure of consideration. Specifically, defendants argue that under the terms of the C.H. Robinson stock program, Rodriguez "automatically forfeit[ed] all restricted stock" upon a breach of the Agreement. First Am. Compl. ¶ 24. A failure of consideration occurs when a contract that was initially valid "becomes unenforceable because the performance bargained for has not been rendered." Franklin v. Carpenter, 244 N.W.2d 492, 495 (Minn. 1976). "Where a promisor received what [s]he bargained for, however, there is no failure of consideration." In re MJK Clearing, Inc., 408 F.3d 512, 515 (8th Cir. 2005) (applying Minnesota law). In other words, the court does not inquire as to what will occur after an alleged breach of contract; it need only

---

[4] Defendants also argue that consideration was lacking because issuance of the restricted stock occurred two years after execution of the Agreement. In the employment context, however, consideration need not be contemporaneous to the execution of a noncompetition agreement. See, e.g., Davies, 298 N.W.2d at 131 (upholding noncompetition agreement where employee received no consideration at time of signing agreement but later obtained "substantial economic and professional benefits"); Satellite Indus., Inc. v. Keeling, 396 N.W.2d 635, 639 (Minn. Ct. App. 1986) (finding sufficient consideration when employee is employed for many years after signing agreement, advances within the company and is given increased responsibilities).

determine whether the promisor received that for which she bargained. Rodriguez, according to the amended complaint, received the restricted stock, and thus subsequent divestment, due to an alleged breach of contract, does not render the Agreement void for failure of consideration. Therefore, defendants' argument is without merit, and the court denies the motion to dismiss for failure of consideration.

**B.   Enforceability of Forum Selection Clause**

Defendants next argue that the forum selection clause is unenforceable. As an initial matter, the court must decide whether to apply state or federal law. The enforceability of a forum selection clause implicates both the substantive law of contracts and the procedural law of venue, and the Eighth Circuit has not taken a definitive position on what law to apply. See Servewell Plumbing, LLC v. Fed. Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006). But see Fru-Con Const. Corp. v. Controlled Air, Inc., 574 F.3d 527 (8th Cir. 2009) ("[E]nforcement ... of the contractual forum selection clause was a federal court procedural matter governed by federal law."). The court need not answer this question, however, because Minnesota follows the federal standard announced by the Court in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). See Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc., 320 N.W.2d 886, 889–90 (Minn. 1982). As a result, the court applies the standard announced in Bremen and adopted by the highest court

in Minnesota. See M.B. Rests., Inc. v. CKE Rests., Inc., 183 F.3d 750, 752 (8th Cir. 1999) (avoiding Erie question and applying federal law to determine enforceability of forum selection clause where parties did not argue federal and state standards differ).

### 1. Rodriguez

"Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." M.B. Rests., 183 F.3d at 752 (citing Bremen, 407 U.S. at 15). When "the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain." Servewell Plumbing, 439 F.3d at 789 (quoting Bremen, 407 U.S. at 15). "A forum selection clause is unjust or unreasonable if: (1) the clause is the product of fraud or overreaching; (2) the party would effectively be deprived of h[er] day in court if the clause is enforced; and (3) enforcing the clause would contravene the public policy of the forum in which suit is brought." St. Jude Med., S.C. v. Biosense Webster, Inc., No. 12-621, 2012 WL 1576141, at *3 (D. Minn. May 4, 2012) (citations omitted).

Rodriguez first argues that the forum selection clause is unreasonable because it is an adhesion contract. Specifically, Rodriguez argues that C.H. Robinson presented the Agreement on a take-it-or-leave-it basis and that her signature was the result of

unequal bargaining power.  The "bare assertion that the [contract was] offered on [this] basis is not sufficient as a matter of law to establish adhesion." Dominium Austin Partners, LLC v. Emerson, 248 F.3d 720, 727 (8th Cir. 2001).  Moreover, "[t]he fact that the contract was a form contract and that the individual clauses were not actually negotiated does not render the clause per se unenforceable."  M.B. Rests., 183 F.3d at 753 (citing Carnival Cruise Lines v. Shute, 499 U.S. 585, 593 (1991)).  Viewing the facts in a light most favorable to C.H. Robinson, the court is not persuaded that the Agreement is an adhesion contract.

Rodriguez next argues that the forum selection clause is invalid because it is seriously inconvenient.  In support, Rodriguez explains that she lives more then 2000 miles from Minnesota and that all events pertaining to this action took place in Florida.  Mere inconvenience, however, is insufficient to defeat a forum selection clause.  M.B. Rests., 183 F.3d at 753.  Instead, a party seeking to avoid her promise must demonstrate that proceeding in "the contractual forum will be so gravely difficult and inconvenient that [s]he will for all practical purposes be deprived of h[er] day in court."  Dominium Austin Partners, 248 F.3d at 727 (citation and internal quotation marks omitted).  No such evidence is present.  Therefore, the forum selection clause is not unreasonable, and dismissal of Rodriguez is not warranted.

11

### 2. Sun Commodities

Sun Commodities argues that it is not subject to the forum selection clause because it was neither a party nor an intended third-party beneficiary to the Agreement. However, "a third party may be bound by a forum selection clause where it is 'closely related to the dispute such that it becomes foreseeable that it will be bound.'" Medtronic, Inc. v. Endologix, Inc., 530 F. Supp. 2d 1054, 1056 (D. Minn. 2008) (quoting Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 757 (8th Cir. 2001)).[5] In Medtronic, the court explained that the defendants were closely related, because the third-party employer solicited employees while being "fully aware of the [noncompete] agreements and, hence, the forum selection clauses." Id. at 1057. Sun Commodities, relying on this language, attempts to distinguish Medtronic, and argues that C.H. Robinson did not allege in the first amended complaint that it knew of Rodriguez's noncompetition agreement.

A company's lack of knowledge regarding a noncompetition agreement, however, does not end the inquiry. For example, the Medtronic court also explained that "all of the defendants clearly share a common interest in this action: the right of [former employees] to solicit their former ... customers on behalf of their

---

[5] Both parties cite Minnesota law. In C.H. Robinson Worldwide, Inc. v. FLS Transportation, Inc., 772 N.W.2d 528, 534-35 (Minn. Ct. App. 2009), Minnesota adopted the federal standard. For the reasons already discussed and because analysis under federal or Minnesota law does not differ, the court applies federal law.

new employer." Id. 1057; see ELA Med., Inc. v. Arrhythmia Mgmt. Assocs., Inc., No. 06-3580, 2007 WL 892517, at *6 (D. Minn. Mar. 21, 2007) (explaining "common interest" among defendants as an important factor in determining whether to apply the closely-related-party doctrine). Moreover, courts will examine whether the defendants' interests are so closely aligned that they are represented by the same counsel. Medtronic, 530 F. Supp. 2d at 1056. Further, courts inquire as to whether the third-party employer was a willing party to a prior litigation involving the same subject matter. See St. Jude Medical, S.C., Inc. v. Biosense Webster, Inc., No. 12-621, 2012 WL 1576141, at *5 (D. Minn. May 4, 2012) ("[Defendant corporation] was a willing party to the first-filed ... action."). As a result, the court is unpersuaded that the only inquiry is whether Sun Commodities was aware of the Agreement prior to hiring Rodriguez.[6]

Instead, the proper inquiry is whether, "the third party reasonably [should] foresee being bound by the forum selection clause because of its relationships to the cause of action and the signatory to the forum selection clause." Medtronic, 530 F. Supp. 2d at 1057. Sun Commodities and Rodriguez share a common interest in Rodriguez's continued employment, have the same attorney and Sun

---

[6] From a policy standpoint, this interpretation is logical because otherwise employers have a disincentive to inquire as to whether a noncompetition agreement exists between a prospective employee and their former employer.

Commodities has already sought a declaration of its rights under the Agreement in Florida federal court. See Sun Commodities, Inc. v. C.H. Robinson Worldwide, Inc., No. 11-62738, 2012 WL 602616 (S.D. Fla. Feb. 23, 2012). Moreover, after learning of Rodriguez's employment at Sun Commodities, C.H Robinson sent cease-and-desist letters threatening legal action against both defendants. First Am. Compl. Ex. 3. Despite this warning, Sun Commodities continued to employ Rodriguez. As such, it was foreseeable that Sun Commodities would be haled into court in Minnesota. Therefore, Sun Commodities is subject to personal jurisdiction under the closely-related-party doctrine, and dismissal of Sun Commodities is not warranted.

**II. Failure to State a Claim**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above

14

the speculative level.  See Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action are not sufficient to state a claim." Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

Defendants argue that dismissal for failure to state a claim is warranted because the Agreement is invalid for lack of consideration and failure of consideration and that the forum selection clause is unjust and unreasonable. As already explained, these arguments fail.  Therefore, defendants' motion to dismiss for failure to state a claim is denied.

## CONCLUSION

Accordingly, based on above, **IT IS HEREBY ORDERED** that defendants' motion to dismiss [ECF No. 10] is denied.

Dated:  October 12, 2012

s/David S. Doty
David S. Doty, Judge
United States District Court